FILED
OCT 22 2015
U.S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>v.    )  No.<br>)<br>DONALD BRIAN HAVEY, D.C., )<br>)<br>Defendant. ) | **4:15CR00483 JAR** |

## INFORMATION

### COUNT ONE

The United States Attorney charges that:

1. At all times relevant to this information, defendant Donald Brian Havey, D.C., was a licensed doctor of chiropractic medicine in the state of Missouri.

2. At various times relevant to this information, defendant Havey owned and operated companies that sold orthotic devices in Missouri and elsewhere. Defendant Havey was the registered agent for each of the companies listed in paragraph 3 below.

3. At all times relevant to this information, Spinal Decompression of Chesterfield; Senior Care, Inc.; Advanced Custom Orthotics, Inc.; and Missouri Custom Orthotics were incorporated in the state of Missouri. Midwest Illinois Orthotics, LLC was incorporated in the state of Illinois (referred to collectively hereafter as Companies). The Companies were principally engaged in providing medical equipment (DME) to the public, including Medicare Part B beneficiaries.

4. At all times relevant to this information, Susan Reno and her company, Pinnacle Billings and Collections, provided billing services for Dr. Havey and each of his Companies.

## Relevant Medicare Provisions

5. The Medicare Program is a federal health benefits program for the elderly, disabled, and ESRD (end stage renal disease) patients. In general, Part A of the Medicare Program authorizes payment of federal funds for inpatient care in hospitals and skilled nursing facilities, while Medicare Part B authorizes payment for outpatient health services, including durable medical equipment.

6. The United States Department of Health and Human Services (HHS), through the Centers for Medicare and Medicaid Services (CMS), administers the Medicare Program. CMS acts through fiscal agents, which are private companies that review claims and make payments to providers for services rendered to Medicare beneficiaries.

7. Noridian Administrative Services is the Medicare contractor responsible for receiving, reviewing and paying claims submitted by medical and chiropractic physicians in Missouri.

8. National Government Services is the Medicare contractor responsible for receiving, reviewing and paying claims for DME in Illinois.

Provider/Supplier Application and Reimbursement

9. To receive Medicare reimbursement, suppliers must submit a written application and execute a written provider agreement. The provider agreement obligates the provider to know, understand, and follow all Medicare regulations and rules.

10. Between in or about 2009 and 2011, defendant Havey, as the owner, operator, or agent, completed and signed Medicare provider/supplier applications and certification statements for each of his Companies. Each of these Companies was assigned a unique supplier number, which each company had to use on all reimbursement claims submitted to Medicare.

Retention of Records

11.     Medicare providers must retain clinical records for the period of time required by state law or five years from the date of discharge if there is no requirement in state law. Missouri statutes require that physicians maintain patient records for a minimum of seven years from the date the last professional services were rendered.

**Relevant Missouri Medicaid Provisions**

12.     In the State of Missouri, the Medicaid program is known as "MO HealthNet." The Missouri Department of Social Services, MO HealthNet Division, administers the Missouri Medicaid Program, which is jointly funded by the State of Missouri and the federal government. Missouri Medicaid reimburses health care providers for covered services rendered to qualified low-income Medicaid recipients.

13.     A Medicaid provider must enter into a written agreement with the Missouri Department of Social Services to receive reimbursement for medical services and durable medical equipment provided to Medicaid recipients and must agree to abide by Missouri Division of Medical Services' (DMS's) regulations in rendering and billing for those services.

14.     Medicaid reimburses providers for DME, including foot and ankle orthotics. The MO HealthNet Durable Medical Equipment Provider Manual (hereafter Medicaid Manual) provides that MO HealthNet will generally reimburse for orthotics if the orthotics are reasonable and necessary for use in the patient's residence to treat an illness or injury.

15.     Claims submitted by DME providers must contain, among other things, the following information: the recipient's identification number, the provider's identification number, the appropriate procedure code and any appropriate modifier, the units or number of services, and the charge amount.

3

16. If the patient, for whom a service is provided, is a qualified Medicare and Medicaid beneficiary (commonly referred to as "dual eligible"), Medicare and Medicaid share the cost of the patient's DME items. Claims involving a dual eligible patient, for whom both Medicare and Medicaid are payers, are commonly referred to as "cross-over" claims.

17. Medicaid providers must retain, for five years from the date of service, fiscal and medical records that reflect and fully document services billed to Medicaid, and must furnish or make the records available for inspection or audit by the Missouri Department of Social Services or its representative upon request. Failure to furnish, reveal, or retain adequate documentation for services billed to Medicaid may result in the recovery of the payments for those services not adequately documented and may result in sanctions to the provider's participation in the Medicaid Program. This policy continues to apply in the event of the provider's discontinuance as an actively participating Medicaid provider through the change of ownership or any other circumstance.

### Private Health Insurance Companies

18. The Companies were providers for several private health insurance companies. At all relevant times, the private insurance companies were federal health care benefit plans, as defined by federal law.

### The Fraud Scheme

19. It was part of a scheme and artifice to defraud that beginning in or about 2009 and continuing to in or about 2014, the defendant executed and attempted to execute a scheme to defraud Medicare, Medicaid, other public and private health insurance companies, and patients by creating and using false documents, including false and fraudulent reimbursement claims, related to ankle-foot orthotics.

20. It was further part of the scheme and artifice to defraud that defendant Havey marketed a "Fall Prevention Program" (Program) to nursing homes. Defendant Havey told the nursing homes that the Program would reduce falls by almost 50% and would improve the patients' quality of life. Defendant Havey, and others acting at his direction, deliberately concealed from the nursing homes that the real purpose of the Program was to sell orthotic boots to the nursing home patients.

21. It was further part of the scheme and artifice to defraud that defendant Havey, and others acting at his direction, told the nursing homes that there would be little or no cost to the patients, when defendant Havey knew that a Medicare patient could be charged as much as $500.00, if the patient did not have supplemental insurance.

22. It was further part of the scheme and artifice to defraud that defendant Havey created several websites to market the Program. One website (www.seniorcareinc.net) stated that the patients would incur little or no cost if they participated in the Program.

23. It was further part of the scheme and artifice to defraud that defendant Havey entered into agreements with chiropractors in Missouri and other states, including Texas, Alabama, California, Georgia, Illinois, Kentucky, Massachusetts, Mississippi, Oklahoma, Rhode Island, and Tennessee, to market the Program and to sell orthotic boots.

24. It was further part of the scheme and artifice to defraud that defendant Havey created a document entitled "Senior Care, Inc. Fall Prevention Program Training Manual and Handbook" (Training Manual), which provided detailed instructions on how to implement the Program. The document contained a number of misleading and false statements to induce others to implement the Program.

5

25. The Training Manual clearly displays Defendant Havey's knowledge and understanding of Medicare reimbursement. Specifically with respect to reimbursement, defendant Havey states in the Training Manual that Medicare Part B patients would be preferred and targeted because Medicare does not require pre-authorization, usually has a higher allowable/payable amount than commercial or HMO policies, and usually pays within 14-21 days from the day the claim is received. Further, defendant Havey stated in the Training Manual that Medicare has a set allowable amount for the product so you know how much reimbursement to expect each time. In addition, Medicare pays 80% of the allowable and the remaining 20% is paid by the secondary insurance or Medicaid if the resident has the additional benefits on their policy.

26. As defendant Havey further stated in the Training Manual, Medicare required the DME provider to deliver the product to the patient before submitting a reimbursement claim to Medicare. Nonetheless, he knowingly submitted and caused to be submitted reimbursement claims before the orthotic boots were delivered to the patients. Some examples of these claims are described below

| Patient | Assessment | Delivery Date | Order Date | Claim Date | Payment Date |
| --- | --- | --- | --- | --- | --- |
| G.D. | 5/23/11 | 5/25/11 | 6/1/11 | 5/27/11 | 6/1/11 |
| A.W. | 5/23/11 | 5/25/11 | 6/2/11 | 5/26/11 | 5/31/11 |
| M.S. | 6/8/11 | 6/13/11 | 6/16/11 | 6/14/11 | 6/16/11 |
| D.P. | 7/1/11 | 7/11/11 | 7/13/11 | 7/12/11 | 7/14/11 |
| L.P. | 7/1/11 | 7/8/11 | 7/13/11 | 7/11/11 | 7/13/11 |
| M.M. | 7/1/11 | 7/8/11 | 7/13/11 | 7/11/11 | 7/13/11 |

27. Defendant Havey knew Medicare would scrutinize any company that submitted claims for a large number of very expensive orthotic boots. It was part of the scheme and artifice to defraud that the defendant attempted to conceal from Medicare the number of orthotic boots that defendant Havey and his Companies were ordering. To accomplish this, defendant Havey submitted claims under several of the Companies, although there was no business reason for submitting claims in this manner. As an example, a representative of defendant Havey assessed and ordered orthotics for five Medicare patients residing in the same facility on the same day. Two of the residents' claims were submitted to Medicare using Advanced Custom Orthotics as the supplier and the other three were billed to Medicare using Senior Care Orthotics as the supplier.

28. The Healthcare Common Procedure Coding System (HCPCS) is a standardized coding system that is used to identify certain supplies, services, and products, such as DME products provided to patients. It was further part of the scheme and artifice to defraud that defendant Havey included on reimbursement claims a combination of HCPCS codes that he knew did not describe the orthotic boots that were actually provided to the patients.

29. On or about September 27, 2011, in the Eastern District of Missouri,

**DONALD BRIAN HAVEY, D.C.,**

the defendant herein, knowingly and willfully executed and attempted to execute, the above described scheme and artifice to defraud a health care benefit program, in connection with the delivery and payment for health benefits, items, and services, that is, the defendant submitted and caused the submission of a false and fraudulent reimbursement claim to Medicare for orthotic boots provided to Patient A.W.

All in violation of Title 18, United States Code, Sections 1347(a)(1) and 2.

## FORFEITURE ALLEGATION

The United States Attorney further finds by probable cause that:

1. Pursuant to Title 18, United States Code, Section 982(a)(7), upon conviction of an offense in violation of Title 18, United States Code, Section 1347 as set forth in Count One, the defendant(s) shall forfeit to the United States of America any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense.

2. Subject to forfeiture is a sum of money equal to the total value of any property, real or personal, constituting or derived from any proceeds traceable to said offense.

3. If any of the property described above, as a result of any act or omission of the defendant(s):

   a. cannot be located upon the exercise of due diligence;

   b. has been transferred or sold to, or deposited with, a third party;

   c. has been placed beyond the jurisdiction of the court;

   d. has been substantially diminished in value; or

   e. has been commingled with other property which cannot be divided without difficulty,

the United States of America will be entitled to the forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p).

Respectfully submitted,

RICHARD G. CALLAHAN
United States Attorney

_____
DOROTHY L. McMURTRY, #37727MO
Assistant United States Attorney

8

UNITED STATES OF AMERICA )
EASTERN DIVISION )
EASTERN DISTRICT OF MISSOURI )

I, Dorothy L. McMurtry, Assistant United States Attorney for the Eastern District of Missouri, being duly sworn, do say that the foregoing information is true as I verily believe.

*[signature]*
DOROTHY L. McMURTRY, #37727MO

Subscribed and sworn to before me this 2nd day of October, 2015

*[signature]*
CLERK, U.S. DISTRICT COURT

By: *[signature]*
DEPUTY CLERK